**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GURDASBIR SINGH,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 1:26-cv-03451-JLT-EGC<br>A-Number: 246-765-699<br>ORDER DENYING PETITIONER'S MOTION TO ENFORCE<br>(Doc. 12) |

Before this Court is Petitioner's Motion to Enforce. (Doc. 12.) For the reasons set forth below, the Court **DENIES** the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court has summarized the factual and procedural history behind this action in a previous order and incorporates that by reference here. (*See* Doc. 10.) On May 19, 2026, this Court granted Petitioner's petition for writ of habeas corpus, holding that his re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment. (Doc. 10 at 3.) The Court further ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing at which Respondents bear the burden of proof by clear and convincing evidence to show that Petitioner presents a flight risk or danger to the community. (*Id.*)

On June 1, 2026, a bond hearing was held pursuant to this Court's order. (Doc. 12 at 6; *see also,* Digital Audio Recording ("DAR ").) At the outset of the bond hearing, the Immigration

Judge questioned Petitioner about his immediate family ties in the United States, his employment and tax payment history, whether he possessed a valid driver's license, and his residence, including the identity of those with whom he lived. (DAR at 6:07 – 15:18.) The IJ specifically asked Petitioner how many individuals resided in his home and the number of rooms in the residence. (*Id*. at 14:54 – 15:46.)

The IJ then questioned Petitioner about the three missed biometric check-ins that occurred on February 29, 2026, March 12, 2026, and April 9, 2026, according to the Form I-213 submitted by Department of Homeland Security. In response, Petitioner asserted that he only missed one at-home check-in, during which an immigration officer came to his house and immediately drove off without getting out of the car, despite Petitioner standing at the front door.[1] (DAR at 18:21 – 18:26, 19:27 – 19:44.) As to the other missed biometric check-ins, Petitioner claimed he had complied by sending photographs while he was at work. (*Id*. at 20:44 – 20:54.) Petitioner's counsel challenged the accuracy of the Form I-213 during the hearing, noting that the date cited for one of the missed biometric check-ins – "February 29, 2026" – did not exist. (*Id*. at 26:00 – 12:19.)

During the hearing, DHS proffered several arguments in support of detention based on flight risk. First, DHS acknowledged the February 29, 2026, date corresponding to one of the missed biometric check-ins was a typographical error, but that it ultimately amounted to "harmless error" given the total of three recorded incidents of non-compliance. (DAR at 27:51 –

---

[1] In his motion to enforce, Petitioner provides additional insight into this incident:

> In February, during the home visit by the ICE Officer, Petitioner briefly stepped away from his immediate doorstep to retrieve his mail at a centralized, collective mailbox cluster designated for the neighborhood community. Petitioner received the call from the officer asking him where he was. Petitioner came to the door right away. Officer was sitting in his car, but told Petitioner that, "I already wrote down that I did not see you, just come to the ICE office," and terminated the encounter. The officer then asked him to come to the ICE office within 30 minutes. Petitioner immediately complied and reported to the Fresno ICE field office within thirty minutes of the call. Upon his arrival, the desk officer informed Petitioner that this encounter would serve as his "first and last warning," processed his fingerprints, and permitted him to leave.

(Doc. 12 at 7, ¶ 22.)

28:38.) Second, DHS scrutinized the letter from Petitioner's sponsor and questioned the sponsor's ability to ensure Petitioner's compliance with reporting requirements. (*Id*. at 28:39 – 29:19.) At the conclusion of the hearing, the IJ found that DHS had met its burden to establish by clear and convincing evidence that Petitioner was such a risk of flight that no amount of bond was appropriate. (*Id*. at 29:39 – 32:30.) The written order subsequently issued by the IJ reiterated many of the same facts justifying her finding that Petitioner "is such a significant flight risk and no bond is the only way to secure his future appearance." (Doc. 14-1 at 79.)

On June 12, 2026, Petitioner filed the instant motion, arguing that his continued detention without an adequate bond hearing violates this Court's prior habeas corpus order and, necessarily, his Fifth Amendment due process rights. (*See generally,* Doc. 12.) Respondents did not substantively oppose the motion, but submitted to the Court the audio of June 1, 2026, bond hearing, Petitioner's Motion for a Custody Determination before the BIA, the evidence submitted by DHS at the bond hearing, and the IJ's written bond order. (Doc. 14.)

## II. LEGAL STANDARD

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). Habeas courts may also review questions of pure law *de novo*. *See Singh v. Holder*, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (The Court's review for abuses of discretion is limited to those which allege violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions) (citation and quotations omitted). In other words, the Court's review is effectively limited to whether the IJ's decision "reflects 'clear legal error' or is unsupported by sufficient

evidence." *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). The reviewing court must always bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## III. ANALYSIS[2]

Having carefully considered and reviewed Petitioner's submissions and the digital audio recordings of the June 1, 2026, bond hearing, the Court finds that that Petitioner has not demonstrated that Respondents failed to comply with its prior habeas order or that the IJ abused her discretion in such a way as to violate Petitioner's due process rights. Much of the reasoning underpinning Petitioner's motion is devoid of citations to case law and instead relies on generalized notions of Due Process to demonstrate that the IJ "improperly denied bond by incorrectly finding that Petitioner was a flight risk." (Doc. 12 at 2.)

### A. Burden of Proof and Accuracy of Evidence

The Court first considers Petitioner's claims that the IJ abused her discretion by finding that Respondents' had met their burden of proof to prove by clear and convincing evidence that Petitioner was a flight risk. (Doc. 12 at 6-7.) As support, Petitioner cites the fact that the only piece of evidence submitted by DHS was Petitioner's Form I-213, which documented three missed required check-ins resulting on February 29, March 12, and April 9, 2026. (*Id.*) Petitioner accuses the IJ of "blindly accept[ing] the Form I-213 as an infallible, 'reliable document' to establish ATD violations," especially considering the reference to an incorrect date (February 29)

---

[2] This Court has previously waived the prudential exhaustion requirement in procedurally similar cases. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5, n.7 (E.D. Cal. Jan. 29, 2026) (finding that petitioner satisfied irreparable injury *Laing* factor by "demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it takes to have an appeal decided."); *see also, Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026) (holding that where a Petitioner seeks to enforce a prior habeas order in which an explicit finding of irreparable harm due to continued detention was made, such a previous finding satisfies the second *Laing* factor for the purposes of the prudential exhaustion requirement); *SEHAJVEER SINGH (A-No. 245-003-055), Petitioner, v. WARDEN OF GOLDEN STATE ANNEX FACILITY, et al., Respondents*, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508 at *3 (E.D. Cal. May 13, 2026) (same). The Court therefore adopts the reasoning of the above-mentioned cases and waives the prudential exhaustion requirement here on similar grounds.

and Petitioner's "uncontradicted" testimony detailing his "absolute compliance." (*Id*. at 9, ¶ a.)

As a threshold matter, IJ's have broad discretion to consider a number of factors to determine whether the detainee merits release on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). These factors include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the aliens manner of entry to the United States. *Id*. In addition, the IJ may consider the alien's potential eligibility for relief from removal as a reflection on the risk of flight. *See, e.g., Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025) (finding the possibility of relief from removal to be "speculative," and citing *Matter of Andrade*, 19 I. & N. Dec. 488, 491 (BIA 1987)).

The IJ applied the correct legal standard and considered proper factors in denying bond based on Petitioner's risk of flight. During the bond hearing, the IJ recognized that pursuant to an order from this Court, the government bore the burden to prove by clear and convincing evidence that Petitioner was either a danger to the community or a flight risk. (DAR at 1:32 -1:36.) In finding that the government satisfied that burden, the IJ properly considered (1) Petitioner's recent illegal entry in 2023, (2) Petitioner's lack of immediate family members in the United States, (3) Petitioner's failure to obtain a valid driver's license, (4) Petitioner's missed biometric check-ins and the fact that his sponsor's letter did not address the missed biometric check-ins or address efforts moving forward to ensure compliance, and (5) the fact that his relief from removal is speculative. (DAR at 29:39 – 32:30; Doc. 14-1 at 78-79.)

To the extent that Petitioner argues that the IJ placed too much weight on the Form I-213,[3]

---

[3] In immigration court proceedings and related appeals, I-213s are generally "presumed trustworthy because of an assumption that public officials 'perform their duties properly without motive or interest other than to submit accurate and fair reports.'" *Janjac v. I.N.S.*, 46 F.3d 1142, *2 (9th Cir. 1995); *see also*

the Court lacks the ability to "second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is undisputed, "differences in interpretation of the facts" remain "well within the province of the immigration judge"); *See Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) (finding that "inherent in the IJ's order is a conclusion that the Petitioner's evidence was not as convincing as the Government's evidence"). Complaints about the IJ's weighing of specific pieces of evidence and the ultimate the conclusion the IJ reached must be presented through the normal immigration appeal process. Because the IJ applied the correct legal standard and relied on appropriate evidence in arriving at his decision, that Court cannot conclude that the IJ failed to comply with the Court's order on this basis.

**B. Failure to Act as a Neutral Arbitrator**

In the introductory paragraphs of his motion, Petitioner notes that "[t]his one of the many cases where Immigration Judges are systematically denying bond to non-citizen detainees, regardless of the weight of the evidence." (Doc. 12 at 2.) Petitioner then goes on to allege that his due process rights were violated because "the Immigration Judge abandoned her duty to be a neutral arbitrator by taking over the government's argument" and by "act[ing] as a prosecutor to one party." (*Id*. at 8, ¶ 30.)

It is unquestionable that where an IJ fails to act as a partisan adjudicator, the noncitizen's due process rights may be violated. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (finding a due process violation where "[a]t the start of the hearing, the IJ indicated that he had already judged [petitioner's] claim" and where the IJ acted as a "partisan adjudicator seeking to intimidate [petitioner] and his counsel.") "An immigration decision violates due process if the

---

*Gutierrez–Berdin v. Holder*, 618 F.3d 647, 653 (7th Cir. 2010) ("Form I–213 is a presumptively reliable administrative document."). As such, "information on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien." *Espinoza v. I.N.S.*, 45 F.3d 308, 310 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1995). This presumption "closely tracks" Federal Rule of Evidence 803(8), which "exempt[s] public records containing factual findings from an official investigation from the prohibition on hearsay 'unless the sources of information or other circumstances indicate lack of trustworthiness.' " *Espinoza*, 45 F.3d at 310–11. Because the Federal Rules of Evidence do not apply in immigration hearings, "[t]he sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair," and thus admission of a Form I–213 "is fair absent evidence of coercion or that the statements are not those of the Petitioner." *Id*. at 310.

proceeding was 'so fundamentally unfair that the [applicant] was prevented from reasonably presenting his case.'" *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014) (quoting *Ramirez-Alejandre v. Ashcroft*, 319 F.3d 365, 380 (9th Cir. 2003) (en banc)). "To prevail on a due process claim, a petitioner must demonstrate both a violation of rights and prejudice," *id.*, which "is essentially a demonstration that the alleged violation affected the outcome of proceedings." *Lata v. I.N.S.*, 204 F.3d 1241, 1246 (9th Cir. 2000). Petitioner can meet this burden by showing "a deep-seated favoritism or antagonism that would make fair judgment impossible," *Rivera v. Mukasey*, 508 F.3d 1271, 1276 (9th Cir. 2007) (internal quotation marks and citation omitted), but "a mere showing that the IJ was unfriendly, confrontational, or acted in an adversarial manner is not enough," *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016).

Though Petitioner argues that the IJ improperly "took over cross examination on behalf of the Government," nothing in the record here indicates that the IJ acted as a "partisan adjudicator seeking to intimidate [petitioner] and his counsel" *Colmenar*, 210 F.3d 967 at 971, or that the IJ denied Petitioner the ability to reasonably present his case. *See Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016); 8 C.F.R. § 1003.10(b) (noting that IJs have the express power to "interrogate, examine, and cross-examine" noncitizens).

To the extent that Petitioner appears to question the impartiality and independence of the immigration bench, Petitioner has not established that the specific IJ overseeing Petitioner's bond hearing demonstrated "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007) ("In order to prevail on a due process claim that he was denied a full and fair hearing, an alien must also show prejudice—that his rights were violated in a manner so as potentially to affect the outcome of the proceedings") (internal quotation marks and citation omitted). As such, Petitioners' argument that the IJ failed to act as a neutral arbitrator necessarily fails as well.

**C. Reference to Sponsor's Income**

Petitioner argues that the reference to Petitioner's sponsor's annual income in the IJ's written order violated Petitioner's due process. (Doc. 12 at 9, 11.) Specifically, Petitioner claims that "the IJ penalized Petitioner's qualifying sponsor because her 2024 tax returns reflected an

annual household income of $11,641," thereby "converting the sponsor's low-income status into an affirmative negative factor establishing flight risk." (*Id*. at 9, ¶ b.) The reference to Petitioner's sponsor in the written order is as follows:

> [Petitioner] has a sponsor who he states is someone else's sister. His sponsor claims [Petitioner] is her cousins' brother, and she will provide [Petitioner] with a safe and stable residence and assist him with all matters related to his immigration process. Her most recent taxes in 2024 show her has having a husband and two children and Respondent indicated that her maternal grandmother lives in the home as well. The income on the 2024 taxes shows an annual income of 11,641 for the entire family for the entire year.

(Doc. 14-1 at 49.)

Again, Petitioner provides no legal authority for the proposition that considering a sponsor's income as part of a flight risk analysis violates basic due process tenets. (Doc. 12 at 11, ¶ 40.) This is not a case where Petitioner is being detained solely because of his or his sponsor's inability to post bail. *See Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (holding detention of an indigent for inability to post money bail to be impermissible if the individual's appearance at trial could reasonably be assured by one of the alternate forms of release) (internal quotations and citations omitted).

Furthermore, pursuant to BIA case law, the existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk. *See Matter of Dobrotvorskii*, 29 I. & N. Dec. 211 (BIA 2025); *Matter of R-A-V-P-*, 27 I&N Dec. at 806 & n.3 (stating that in assessing flight risk, the IJ may consider a sponsor's immigration status and ability to financially support an alien and ensure his or her presence at future immigration hearings because, while the Board's reasoning in *Matter of Guerra*, did not specifically enumerate those factors, those factors are relevant to whether the alien will have a fixed address during the immigration proceedings and the likelihood that the alien will appear at future hearings).

Even assuming, *arguendo,* the IJ's consideration of Petitioner's sponsor's income as part of a flight risk analysis violates basic due process, Petitioner again fails to demonstrate prejudice by proving that the alleged violation affected the outcome of proceeding. *See Vargas-Hernandez,* 497 F.3d 919 at 926.

### D. Consideration of Alternatives to Detention

Lastly, Petitioner argues that the IJ defied the Court's order by failing to consider any Alternatives to Detention. (Doc. 12 at 8, 11.) Under Ninth Circuit precedent, however, an IJ need only consider "alternative conditions to release" once the IJ determines that the detainee is "neither dangerous nor so great a flight risk as to require detention without bond." *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017); *see also Hernandez v. Lynch*, 2016 WL 711611, at *5 (C.D. Cal. Nov. 10, 2016) ("At [initial bond hearings], Immigration Judges are required to consider alternatives to detention when setting bond amounts." Because the IJ here determined that Petitioner poses a flight risk and bond is inappropriate, the IJ did not need to consider alternatives to detention. As Petitioner has not demonstrated otherwise, Petitioner's argument necessarily fails.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Petitioner's motion to reopen habeas proceedings enforce the Court's earlier order (Doc. 12) is **DENIED**. The case remains **CLOSED**.

IT IS SO ORDERED.

Dated: _August 11, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE